J-S87027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.E.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.C.M. | |
| Appellant | No. 1118 MDA 2016 |

Appeal from the Order Entered June 1, 2016
In the Court of Common Pleas of Perry County
Domestic Relations at No(s): 11-00132
PACSES #831112601

BEFORE:    LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                **FILED JANUARY 31, 2017**

Appellant, A.C.M. (Father), appeals from the order denying his petition for disestablishment of paternity or for a genetics test of the parties' child, who was born in May of 2011. Father contends the trial court erred by not properly considering the best interests of the child and whether the child would suffer harm if genetic testing established he was not the father. We affirm.

Father and Appellee, S.E.M. (Mother), were married in 2009 and separated in January of 2011. He alleges that Mother concealed that she stopped taking birth control and that she was pregnant. Father claims he

_____

[*] Retired Senior Judge assigned to the Superior Court.

learned Mother was pregnant in February of 2011, three months before the child was born in May of 2011. Mother testified that Father was the biological father of their child and that she did not have any extramarital affairs. N.T. Hr'g, 6/1/16, at 12. Father's name is listed as the child's father on the child's birth certificate. *Id.* at 8. The parties divorced in October of 2012. *Id.* at 5-6.

Father has seen the child only twice. He testified that every other time he attempted to visit, "something would come up either on my end or [Mother's] end." N.T. at 6. Mother testified that the child has seen pictures of Father but does not know his name. *Id.* at 13.

Father has paid court-ordered child support since 2012. N.T. at 8. Until he filed the underlying motion in 2016, Father did not challenge his obligation to pay child support. He now concedes that he seeks to disestablish paternity so that he can avoid further child support obligations. *Id.* at 10.

On March 10, 2016, Father filed the instant petition to establish paternity or for genetic testing, or both.[1] Father testified that he wanted

---

[1] That day, Father also filed a petition for modification of a prior child support order, claiming that because he was unemployed, he could not pay the court-ordered amount. Subsequently, Father found a new job. The court resolved the petition on July 28, 2016, by increasing Father's child-support payment.

genetic testing to confirm the child is his. N.T. at 8. If the child is his, Father wants the child to know Father's current wife and son. *Id.* at 7.

After appointing a guardian *ad litem* for the child, the court held a hearing on June 1, 2016. On June 3, 2016, the court docketed an order denying the petition. The court held that, having accepted the child and treated the child as his own, Father was estopped from contesting paternity. Trial Ct. Op., 8/22/16, at 1-2 (unpaginated). With respect to the child's best interest, the court stated:

> [I]t would not be in the child's best interest if [Father] is permitted to renounce his previously assumed parental duties and obligations. The child was conceived during the marriage and, although born after the parties had separated, [Father's] name is on the child's birth certificate. [Father] has been paying child support since 2012, and has had ample time to raise the issue of paternity but failed to do so. Since 2012, [Mother] and the child have relied on the child support provided by Appellant which is needed for continuity and financial support. Although [Father] only had contact with the child twice when he was first born, [Father's] lack of relationship with the child is due to [Father's] lack of initiative. [Mother] has been attempting to foster a relationship by showing the child pictures of [Father]. This [c]ourt finds that [Father's] primary reason for filing the petition to disestablish paternity is his primary concern of whether the child support he is providing is going to the child. For the above aforementioned reasons, this [c]ourt determined that a blood test would be detrimental to the child.

*Id.* at 3.

On July 1, 2016, Appellant filed a timely notice of appeal and a Pa.R.A.P. 1925(a)(2)(i) statement. Father raises the following issue:

Did the trial court commit an error of law when [it] dismissed [Father's] Petition for Disestablishment of Paternity and/or Genetic Tests, where there was no competent evidence of record regarding the best interest of the child and the harm that would befall the child if paternity was disestablished?

Father's Brief at 3.

We evaluate the trial court's order for an abuse of discretion. **Vargo v. Schwartz**, 940 A.2d 459, 462 (Pa. Super. 2007). The legal analysis has two stages:

First, one considers whether the presumption of paternity applies to the particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies.

**Id.** (citation and brackets omitted).

"[T]he presumption of paternity applies *only* where the underlying policy to preserve marriages would be advanced by application of the presumption. When there is no longer an intact family or a marriage to preserve, then the presumption of paternity is not applicable." **Vargo**, 940 A.2d at 463 (citations omitted). Instantly, Mother and Father are divorced; thus, there is no intact family unit or marriage to preserve. **See id.**

The trial court held that there was paternity by estoppel. In **Vargo**, this Court explained:

Estoppel in paternity actions is a legal determination based on the conduct of the mother and/or the putative father with regard to the child, *e.g.*, holding out the child to the community as a product of their marriage and/or supporting the child. If the evidence is sufficient, estoppel

- 4 -

may bar either a putative father from denying paternity or a mother from succeeding in a claim of paternity against a third party. Estoppel rests on the principle that a person may not challenge his role as a parent once he has accepted it, even with contrary DNA and blood tests.

*Id.* at 464 (citations and quotation marks omitted).[2] Thus, "[w]here the husband has accepted his wife's child and held it out as his own over a period of time, he is estopped from denying paternity." *Commonwealth ex rel. Hall v. Hall*, 257 A.2d 269, 271 (Pa. Super. 1969) (citation omitted).

In *Hall*, the parents separated two years after their child was born. The father never challenged the child's paternity for those two years. *Hall*, 257 A.2d at 271. After the parties separated, the father executed a separation agreement acknowledging the child was his, paid child support, "and made extensive arrangements for visitation rights." *Id.* Accordingly, this Court held that the father was not entitled to a blood test to establish the child's paternity. *Id.*

---

[2] "The presumption of paternity and the doctrine of estoppel, therefore, embody the two great fictions of the law of paternity: the presumption of paternity embodies the fiction that regardless of biology, the married people to whom the child was born are the parents; and the doctrine of estoppel embodies the fiction that, regardless of biology, in the absence of a marriage, the person who has cared for the child is the parent." *Brinkley v. King*, 701 A.2d 176, 180 (Pa. 1997) (plurality). The concepts are "fictions" in that they may contradict biological parentage, but they nevertheless determine the fact of legal parentage.

In **K.E.M. v. P.C.S.**, 38 A.3d 798 (Pa. 2012), our Supreme Court explained the interplay between paternal estoppel and the best interests of the child at issue:

> [S]ubject to modest qualification, we join the sentiment expressed in an opinion authored by the late, Honorable William F. Cercone, as follows:
>
> > Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose.
>
> **Commonwealth ex rel. Gonzalez v. Andreas**, 245 Pa. Super. 307, 312, 369 A.2d 416, 419 (1976). The operative language of this passage centers on the best interests of the child, and we are of the firm belief—in terms of common law decision making—that this remains the proper, overarching litmus, at least in the wider range of cases.

**K.E.M.**, 38 A.3d at 807-08 (footnote omitted).

In this case, for the five years between the child's birth and the filing of Father's petition, Father did not challenge his designation as "father" on

the child's birth certificate. Similar to the father in **Hall**, Father has paid child support since 2012. **Cf. Hall**, 257 A.2d at 271. For the child's entire five-year lifetime, Father made no challenge to his paternity at all. We therefore conclude that the trial court did not err in holding that Father is estopped from denying parentage. To paraphrase the Court in **K.E.M.**, Father has not established any overriding equities that would permit him to now renounce his long-assumed duty of parentage and avoid paying child support. **See K.E.M.**, 38 A.3d at 807-08. In this connection, the trial court did not err in holding that the child's best interest did not favor disestablishment of paternity. Father's argument to the contrary is little more than an insistence that he has not formed a bonded relationship with the child that calls for preservation. **See** Appellant's Brief at 7-10. The policy of the law that is reflected in **K.E.M.**, however, is that a child's best interests call for protection of a child from disestablishment of his father's paternity. No additional proof of the child's best interest is needed.

Accordingly, we discern no abuse of discretion by the trial court when it denied Father's petition for disestablishment of paternity or for genetic testing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/31/2017